UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN CAMMORTO; | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:02 CV 847 (RNC) |
| VS. | : | |
| | : | |
| DANBURY PORSCHE; | : | |
| JOSH WEEKS; | : | |
| PAUL BURKMAN; | : | |
| Defendants | : | JANUARY 7, 2004 |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the undersigned

defendants, Danbury Porsche, Josh Weeks and Paul Burkman (collectively the

"undersigned defendants"), move for summary judgment in their favor as to all claims in

the plaintiff's Amended Complaint.  For the reasons set forth herein, the undersigned

defendants' motion should be granted.[1/]

_____

1/    The plaintiff has also sued Michael Killeen and Bill Kahn, who were added as parties
when the plaintiff filed his Amended Complaint on October 8, 2002.  In its
Recommended Ruling on the undersigned defendants' Motion to Dismiss, the Court
noted that neither of these defendants have been served in accordance with Federal
Rule 4(m) and recommended that the action be dismissed without prejudice as to them
if proof of service or a showing of good cause why service has not been accomplished is
not received by the Court by September 22, 2003.  To date, the plaintiff has not

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## I.     ALLEGATIONS OF THE AMENDED COMPLAINT

The plaintiff, Shawn Cammorto (the "plaintiff" or "Cammorto"), initiated the

present action as a pro se litigant.  The Amended Complaint alleges that the plaintiff is

a resident of Kings County, New York and that all of the defendants are domiciled or

residents of the State of Connecticut.  *Amended Complaint*, ¶ 1.  The Amended

Complaint further alleges that the amount in controversy exceeds $75,000, thereby

triggering this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).  Id., ¶ 2.  The

Amended Complaint avers that the action was commenced to recover damages for

"intentional malicious prosecution, intentional false statement(s), intentional false

accusation(s), negative training and supervision of employee(s), and false

imprisonment of the plaintiff."  Id., ¶ 3.  In particular, the Amended Complaint asserts

that the plaintiff's imprisonment was instigated by the individual defendants, all of whom

were employed by Danbury Porsche.  Id.

The plaintiff maintains that on our about October 23, 2001, the defendants

reported to the Danbury Police Department that a black male using the name of

Michael Miller stole a vehicle from Danbury Porsche.  Id., ¶ 4.  Thereafter, on or about

October 30, 2001, the defendants, according to the plaintiff, deliberately, intentionally

---

complied with the Court's ruling.

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and maliciously identified him in a photograph as the individual who stole the vehicle. Id., ¶ 5. The plaintiff alleges that as a result thereof, he was subjected to mental torment and abuse in an effort to force him to confess to a crime he did not commit. Id., ¶ 6. The plaintiff maintains he was "subject to being arrested and accused of attempting to commit a crime in another jurisdiction, in direct reflection of the alleged crime of the defendant(s) alleged to have occurred on October 23, 2001." Id. The plaintiff claims that since October 30, 2001, he was "incarcerated on a (sic) alleged crime in direct reflection of the alleged crime on October 23, 2001 . . . [and] has been forced to stay in jail due to the fact that a warrant was issued for the plaintiff on November 14, 2001, by the Danbury Police Department[.]" Id., ¶ 7. The issuance of the warrant, according to the plaintiff, has forced him to stay in jail and subjected him to humiliation and ridicule. Id., ¶ 8.

The plaintiff maintains that the imprisonment has been unlawful because he has never been to Danbury Porsche and had no involvement in the alleged larceny. Id., ¶ 9. The plaintiff maintains that the individual defendants are responsible for the warrant being issued and his subsequent imprisonment. The plaintiff seeks compensatory damages in excess of $75,000, as well as punitive damages in the sum of $9 million.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## II.  **FACTUAL BACKGROUND**

At all times relevant to this action, Michael Killeen ("Killeen") was a sales consultant employed with Danbury Porsche (the "Danbury dealership"), 52 Newtown Road, Danbury, Connecticut.[2/] **Exh. A**, *Killeen Aff.* ¶ 2.  On October 22, 2001, Killeen received a phone call from an individual - who identified himself as Michael Miller ("Miller") - inquiring about the availability of late model Porsche Carreras.  Id., ¶ 3. Miller informed Killeen that he was treated poorly at another dealership due to his race (black) and that he was interested in purchasing a late model Carrera.  Id.  The following day, October 23, 2001, Miller arrived at the Danbury dealership.  Id., ¶ 4. Killeen and Miller discussed various topics, including vehicles that were in stock.  Id. Sometime thereafter, Paul Burkman ("Burkman"), the Sales Manager, joined the discussion.  Id., ¶ 5.  An all-wheel Porsche 911 C4 Coupe was discussed as a vehicle that interested Miller.  Id.; **Exh. B**, *Burkman Aff.* ¶ 4.  A silver C4 Coupe was brought from the off-site prep center to the Danbury dealership.  **Exh. A**, ¶ 5.  The vehicle also had a modified exhaust system.  Id., ¶ 6.  Miller stated that he wanted to sit in the vehicle and listen to the sound system.  Id., ¶ 6.  The vehicle was started so that Miller

---

[2/]    Danbury Porsche is a registered d/b/a of Weeks Automobile Corp., 52 Newtown Road, Danbury, Connecticut.  **Exh. E**, *Weeks Aff.* ¶ 2.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

could listen to the modified exhaust and stereo systems.  Id.  When Miller expressed in

interest in leasing the vehicle, Killeen exited the vehicle to speak to Burkman about

financial details for a possible lease.  Id.  As Killeen re-entered the showroom, he heard

tires squealing and observed Miller drive off with the Porsche 911 C4 Coupe.  Id.

Burkman also observed Miller drive off the lot at a high rate of speed. **Exh. B**, ¶ 4.

Killeen immediately contacted the Danbury Police Department to report the motor

vehicle theft.  **Exh. A**, ¶ 6.

On November 2, 2001, Killeen went to the Danbury Police Department and met

with Detective Sergeant Randolph Salazar ("Det. Salazar") of the Danbury Police

Department.  Detective Salazar showed Killeen a photo array containing eight (8)

numbered photographs, each depicting similarly appearing black males.  Id., ¶ 7.  The

photographs did not have names.  Id.  Killeen selected the photograph depicting the

individual who identified himself as Miller and signed it.  Id.  On November 6, 2001,

Burkman went to the Danbury Police Department and also met with Det. Salazar.  **Exh.
B**, ¶ 5.  Burkman was also shown a photo array of eight (8) photographs of similarly

appearing black males.  Id.  Burkman selected a photograph which depicted the person

who identified himself as Miller and signed it.  Id.  Burkman and Killeen provided sworn

statements to Det. Salazar.  **Exh. A & B**.

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

During the course of the investigation, Detective Salazar identified the plaintiff as the suspect who identified himself as Michael Miller. **Exh. C**, *Salazar Aff.* ¶¶ 5-6. Detective Salazar thereafter submitted an arrest warrant application and affidavit seeking a warrant charging Shawn Cammorto with Larceny in the First Degree for theft of the 2001 Porsche 911 C4 coupe. Id. ¶ 6. On November 21, 2001, a Connecticut Superior Judge signed the warrant and set a $200,000 bond. Id., ¶ 7. The signed arrest warrant is currently on file at the Danbury Police Department and a File #5 wanted person type has been entered into the law enforcement NCIC system. Id., ¶ 8. Extradition of Cammorto has not yet been authorized by the Danbury Superior Court as a result of this warrant. Id.

The plaintiff is presently incarcerated in the State of New York Department of Corrections. **Exh. D**, *Certificate of Inmate Status*. The plaintiff is eligible to be released on parole on August 28, 2005. Id., ¶ 5. No detainer has been lodged for the plaintiff in New York based upon the Danbury warrant. Id., ¶ 8; **Exh. C**, ¶ 9. According to the New York State Department of Corrections, the only detainer in the plaintiff's file has been lodged by the Stamford Police Department for unrelated criminal conduct. Id. Once the plaintiff returns to Connecticut, by extradition, transfer or other means, the Danbury warrant will likely be served on him. **Exh. C**, ¶ 9. As the Danbury warrant has

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

never been served on the plaintiff, he has never been formally charged with the criminal

activity arising from the October 23, 2001 incident at Danbury Porsche.

## III.    **ARGUMENT**

### A.    Standard of Review

Summary judgment should be granted if "there is no genuine issue as to any

material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  "The standard for granting summary judgment mirrors the standard for a

directed verdict under Federal Rule of Civil Procedure 50(a)."  Celotex Corporation v.

Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  Summary judgment is

"properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the federal rules as a whole, which are designed to secure the just, speedy and

inexpensive determination of every action."  Id. at 327, 106 S.Ct. at 2555.

A fact is deemed material if it might affect the outcome of the lawsuit.  Anderson

v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  Further, a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the non-moving party."  Id.   The existence of a "scintilla of evidence" in support of the

plaintiff's position is insufficient to overcome a motion for summary judgment.  Id. at

252, 106 S.Ct. at 2512.  In ruling on a motion for summary judgment the judge's inquiry

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

should be "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id. The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

B.   The Plaintiff Cannot Sustain A Malicious Prosecution Claim As The Criminal Proceedings Have Not Terminated In His Favor.

The plaintiff alleges that the defendants maliciously prosecuted him by implicating him as the person who stole the motor vehicle from the Danbury dealership. The plaintiff claims that the information provided by the defendants to the Danbury Police Department resulted in the issuance of an arrest warrant which caused his continued incarceration in the State of New York. The plaintiff's malicious prosecution claim, however, cannot be sustained as the criminal proceedings have not terminated in his favor. In fact, the criminal proceedings have not terminated.

"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

justice." <u>McHale v. W.B.S. Corporation</u>, 187 Conn. 444, 447 (1982); <u>LoSacco v. Young</u>, 20 Conn. App. 6, 19-20 (1989).  To establish the favorable termination requirement, the plaintiff must prove that the criminal charges were "discharged without a trial under circumstances amounting to an abandonment of the prosecution without request from or by arrangement with him."  <u>See v. Gosselin</u>, 133 Conn. 158, 160 (1946).  "An essential element that a plaintiff must allege and prove in a false arrest or malicious prosecution [claim] is a favorable resolution of the underlying criminal charge."  <u>McGhee v. Schwartz</u>, No. CV-89-0369822-S, Superior Court, judicial district of Hartford, 1991 WL 144542 *2 (July 22, 1991), <u>citing</u> <u>McHale</u>, 187 Conn. at 447.  Commencing a lawsuit for false arrest before the entry of the nolle [or acquittal] cannot be lawfully done and subjects the complaint to a motion to strike for failure to allege an essential element.  <u>Id.</u>

    In the present case, the criminal proceedings are at the earliest possible stage, that is, legal process has been issued but not served.  In that the criminal proceedings have only been initiated, they obviously have not terminated.  If the proceedings have not terminated, then they could not have terminated in plaintiff's favor.  Therefore, the plaintiff cannot establish an essential element of his malicious prosecution claim.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

C.     The Defendants Have Qualified Immunity In Reporting Criminal Conduct To A Law Enforcement Agency.

Even if the plaintiff could satisfy the favorable termination requirement, his malicious prosecution claim should nevertheless fail because the defendants are entitled to immunity for their actions.  "The law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests.  It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of criminal law."  McHale, 187 Conn. at 447-48.  The Connecticut Supreme Court has reconciled these competing interests by establishing a policy providing "a limited immunity in the form of the first element that the plaintiff must prove to maintain his cause of action.  A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution."  Id. at 448.  McHale further held that "a private person has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer.  In such a case, if the defendant has made

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution."  Id.

Of the three (3) individual defendants, only two – Burkman and Killeen - provided statements to the Danbury Police Department as part of the criminal investigation. **Exh. A & B**.  There are no allegations in the complaint which describe the involvement of defendant Josh Weeks ("Weeks") - - other than identifying him as the owner and president of Danbury Porsche.  Killeen and Burkman witnessed the theft of the motor vehicle and provided sworn statements and identified the suspect from a photographic array.  There is no evidence that Burkman or Killeen brought pressure of any kind to bear upon Detective Salazar' decision to submit the arrest warrant application.  The evidence, in fact, is to the contrary.  Detective Salazar affirms that neither Burkman, Killeen nor Weeks pressured him to submit the arrest warrant application.  See **Exh. C**, ¶ 9.  Moreover, neither Burkman nor Killeen knew the plaintiff's name when they made the photographic identification and under the circumstances there can be no credible claim that the defendants acted maliciously.  See McHale, supra (it must prove that the defendant acted with malice in order to sustain a malicious prosecution claim). By construing the plaintiff's claims as cognizable would permit a collateral attack by the plaintiff on the sufficiency of an arrest warrant before it has been served, and before a

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

determination as to the plaintiff's guilt.  The doctrine of immunity surely must protect the defendants, and other complainants, at this stage of the criminal judicial process.

>    D.    The Plaintiff Has Not Established A Claim Of False Arrest Since He Has Not Been Confined As A Result Of The Danbury Warrant.

The plaintiff also alleges that he has been falsely imprisoned.  Under Connecticut law, the torts are false imprisonment and false arrest share identical elements and are therefore synonymous.  Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996).  "False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another."  LoSacco, supra, 20 Conn. App. at 19, quoting Green v. Donroe, 186 Conn. 265, 267 (1982).  "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly."  Berry v. Loiseau, 223 Conn. 786, 820 (1992).

In the present case, there are no allegations, let alone proof, that the undersigned defendants in any way restrained the liberty of the plaintiff.  "In the case of a false imprisonment the detention must be wholly unlawful[.]"  LoSacco, at 19, quoting McGann v. Allen, 105 Conn. 177, 188 (1926).  False imprisonment is an intentional tort "for which the remedy of common law was an action for trespass."  Id.; see also Rivera

- 12 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

v. Double A Transportation, Inc., 248 Conn. 21, 31-32 (1999)("nothing less than a

rather extreme brand of recklessness will substitute for the standard requirement of

intention of false imprisonment cases.").  There is no evidence whatsoever that any of

the undersigned defendants at any time physically restrained the plaintiff's liberty.  On

the contrary, it is readily apparent that the plaintiff's actual claim is properly

characterized as one of malicious prosecution.  Because the criminal proceedings have

not terminated, however, the plaintiff has no cognizable claim arising from the issuance

of the Danbury warrant.[3/]

> E.    The Plaintiff Cannot Prevail On His Claim Against Danbury Porsche For
> Improperly Training And/Or Supervising Its Employees.

The factual basis for the plaintiff's "negative" training and supervision claim is

particularly tenuous. The allegations of the complaint seem to suggest that if employees

of Danbury Porsche violated the plaintiff's rights by falsely imprisoning or maliciously

---

[3/]    To the extent that the plaintiff claims his New York incarceration can be attributed to the
undersigned defendants, his claim cannot be sustained.  First, the undersigned
defendants have not confined him to a New York correctional facility.  Second, the
plaintiff is in the custody of the New York State Department of Corrections serving a
sentence on an unrelated New York criminal conviction.  Third, contrary to plaintiff's
argument, there is no evidence that the Danbury warrant has been served upon him, or
that a detainer has been lodged against him as a result of the Danbury warrant, or, if it
had, that it is causing the plaintiff's continued incarceration.  The documents provided by
the New York State Department of Corrections conclusively establish that the plaintiff is
incarcerated in New York for a New York criminal conviction, at least until his parole
eligibility date of August 28, 2005.  See **Exhs. C & D**.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

prosecuting him, then Danbury Porsche must have failed to train or supervise its employees.  Such a claim cannot be sustained under the facts or the law.  First, if there is no liability by the individual defendants, then there can be no liability imputed to Danbury Porsche as their employer.  Second, to the extent that the complaint alleges some type of independent wrongful conduct on the part of Danbury Porsche, conclusory allegations of its alleged negligence in failing to train and/or supervise cannot withstand a motion for summary judgment.  The complaint, in fact, fails to even identify the nature or extent of the deficient supervision and/or training.  Even crediting the allegations of the complaint, it is difficult to conceive how liability could be imputed to Danbury Porsche based upon its employees' conduct in reporting criminal activity at the dealership.

  F. <u>The Plaintiff Cannot Prevail On His Defamation Claim</u>.

  The complaint alleges that the defendants made intentional false statements or accusations.  The Court, in its Recommended Ruling, characterized the plaintiff's claim as libel per se.  The tort of "[d]efamation is comprised of the torts of libel and slander. <u>DeVito v. Schwartz</u>, 66 Conn. App. 228, 234 (2001).  "A prima facie case of defamation is made when the plaintiff demonstrates that:   (1) a defamatory statement was made by the defendants; (2) the defamatory statement identifies the plaintiff to a reasonable

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

reader; (3) the defamatory statement is published to a third person; and (4) the plaintiff's reputation suffers injury."  Beebe v. Beebe, No. 103684, Superior Court, judicial district of New London at Norwich, 1995 WL 617392 *11 (October 12, 1995). "Slander is oral defamation."  DeVito, at 234.  Libel, on the other hand, involves defamation by way of the printed word.  Miles v. Perry, 11 Conn. App. 584, 601 n.11 (1987).

In the present case, the complaint alleges that the "defendants" identification of him as the perpetrator of the automobile theft to the Danbury Police Department was "false."  Defendants Killeen and Burkman identified a photograph as depicting the person who stole the vehicle, signed the photograph, and then provided sworn statements to Detective Salazar.[4/]   Therefore, it appears that the plaintiff's defamation claim is properly characterized as one of libel.

The tort of libel can be separated into (2) classes:  (1) libel per se and (2) libel per quod.  Battista v. United Illuminating Co., 10 Conn. App. 486, 491 (1987).  "A libel per quod is not libel on the face of communication, but becomes libelous in light of the extrinsic facts known by the recipient of the communication."  Id.  "When a plaintiff

---

4/    There is no allegation that Weeks uttered or published any statement about the plaintiff and on this basis alone the defamation claim against him should be dismissed.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

brings an action in libel per quod, he must plead and prove actual damages in order to recover." Id. Conversely, libel per se has "a defamatory meaning which is apparent on the face of the statement and is actionable without proof of actual damages." Id. at 491-92. "Whether a publication is libelous per se is a question for the court" and "must be determined upon the face of the article itself." Id. at 492. A statement is libel per se if it charges of crime involving "moral turpitude or to which an infamous penalty is attached." Id. at 493; see also Miles v. Perry, 11 Conn. App. at 602. An accusation of theft, if proven to be defamatory, is actionable per se. Miles, at 603.

The plaintiff's defamation claim fails for several reasons. First, the defendants did not publish a statement of fact. Second, even if the photographic identification could be construed as a statement of fact, there is no evidence that the identification was false at least until the plaintiff has received a favorable termination of the criminal proceedings. Third, even if a photographic identification could be construed as a false statement of fact, the defendants enjoy either qualified or absolute immunity.

    1.    <u>The Photographic Identifications And Sworn Statements Provided By Killeen And Burkman Are Not Statements Of Fact</u>.

To be considered defamatory, "the statement in question must convey an objective fact as, generally, a defendant cannot be held liable for expressing a mere opinion." <u>Daley v. Aetna Life & Co.</u>, 249 Conn. 766, 795 (1999). The purported

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

"statements" which the plaintiff claims to be defamatory relate to the photographic identification. The plaintiff does not dispute that a 2001 Porsche Carrera C4 was stolen from Danbury Porsche by a black male identifying himself as Michael Miller. The only accusation the plaintiff directs to the defendants is that he was improperly identified as the perpetrator of this crime. As already described herein, the identification by Killeen and Burkman occurred when they were presented with a photographic array by Det. Salazar and asked to select the individual who identified himself as Michael Miller and drove off with the 2001 Porsche. At separate times, Killeen and Burkman identified a photograph. The identification constitutes the opinion of Killeen and Burkman that the individual depicted in the photograph is the person who stole the Porsche. Their expression of an opinion as to the identity of the perpetrator is not an objective statement of fact and therefore cannot sustain a claim of libel (or slander). Under the facts and circumstances of this case, it cannot be credibly argued that the mere selection of the photograph in the context of a criminal investigation can be construed as a statement of fact. Therefore, the plaintiff cannot satisfy the threshold issue that the alleged defamation was a statement of fact.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

2.    The Plaintiff Cannot Demonstrate the Identification was False Until the Criminal Proceedings Terminate in His Favor.

While the plaintiff claims he had no knowledge of or involvement in the theft of the Porsche from the Danbury dealership, a Superior Court judge has found probable cause that the plaintiff stole the subject vehicle. See Granito v. Tiska, 181 F. Supp.2d 106, 115 (S.D.N.Y. 2001)("the law is clear that probable cause for an arrest is presumed when the arrest takes place pursuant to a valid arrest warrant issued by a neutral magistrate."). To allow the plaintiff to challenge the sufficiency of a warrant before it has even been served by bringing a civil lawsuit would undermine the criminal proceeding. The plaintiff's self-serving claims of innocence are hollow in view of the pending warrant. The plaintiff should be required to obtain an acquittal or unqualified dismissal of the criminal proceeding before he can seek damages for an allegedly unlawful arrest. As there is a strong presumption of probable cause for his arrest, based on the signed warrant, the plaintiff cannot demonstrate the at the identifications by Killeen and Burkman were false.

3.    The Defendants Are Immune From Liability Under The Doctrine Of Absolute Privilege.

"The effect of an absolute privilege in a defamation action is that damages cannot be recovered for the defamatory statement, even if it is published falsely and

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

maliciously."  Kelley v. Bonney, 221 Conn. 549, 565 (1992), citing Petyan v. Ellis, 200

Conn. 243, 246 (1986).  In Blakeslee & Sons v. Carroll, 64 Conn. 223, 232 (1894), the

Connecticut Supreme Court first recognized the absolute privilege for statements made

during judicial and quasi-judicial proceedings.  Since Blakeslee, the doctrine of absolute

privilege has been steadily expanded in Connecticut.  For example, it has been applied

to statements made to the State Employment Security Division of the Department of

Labor.  See Magnan v. Anaconda Industries, Inc., 37 Conn. Supp. 38 (1980), rev'd on

other grounds, 193 Conn. 558 (1984).  In Magnan, Judge Berdon reasoned that

"[p]ublic policy demands that employers, employees and other witnesses be free to

speak without fear of the consequences, so long as the statements have some relation

to the proceedings."  Id. at 44.

In Petyan v. Ellis, the Connecticut Supreme Court held that the absolute privilege

applies to statements made during unemployment compensation proceedings which

followed the plaintiff's termination from employment.  200 Conn. at 253.  In so holding,

the court reasoned that "the policy underlying the privilege is that in certain situations

the public interest in having people speak freely outweighs the risk the individuals would

occasionally abused the privilege by making false and malicious statements."  Id. at 246

(citations omitted).  The Petyan court further held that the privilege "extends to every

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

step of the proceeding until final disposition." Id. In Kelley v. Bonney, the plaintiff sued

for defamation when several defendants forwarded a letter and petition to the State

Board of Education requesting the Board to investigate "long-standing, numerous

parent and student complaints of misconduct concerning the plaintiff." Id. at 554-55. In

addition to the State Board of Education, the defendants forwarded copies of the

petition and complaint to the Department of Children and Youth Services, the Attorney

General, and a local newspaper. Id. at 556. Kelley first addressed whether or not the

proceeding was quasi-judicial in nature:

> The judicial proceeding to which absolute immunity attaches has not been
> defined very exactly. It includes any hearing before a tribunal which
> performs a judicial function, ex parte or otherwise, and whether the
> hearing is public or not. It includes for example, lunacy, bankruptcy or
> naturalization proceedings, and an election contest. It extends also to the
> proceedings of many administrative officers, such as boards and
> commissions, so far as they have powers of discretion in applying the law
> to the facts which are regarded as judicial or quasi-judicial in character.

Id. at 256. The court then concluded that all the statements in question were absolutely

privileged against claims for defamation.

More recently, our Appellate Court, in Craig v. Stafford Construction, Inc., held

that police departments' internal affairs investigation is a quasi-judicial proceeding,

thereby immunizing statements made in a citizen complaint against a police officer. 78

Conn. App. 549, 560-61, cert. granted 266 Conn. 916 (2003).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The Connecticut Supreme Court has not yet decided the issue of whether a statement to a law enforcement officer is absolutely privileged from liability for defamation.  The weight of authority from other jurisdictions and commentators, however, support the extension of the privilege to such statements as they are an essential step in a quasi-judicial proceeding.  "Although there is some authority to the contrary, the better view seems to be that an informal complaint to a prosecuting attorney or a magistrate is to be regarded as an initial step in a judicial proceeding, and so entitled to an absolute, rather than a qualified, immunity."  Prosser & Keeton, Torts, Section 114 (5th Ed. 1984).  The Restatement (Second) of Torts § 587, provides that "a party to a private litigation or a private prosecutor . . . is absolutely privileged to publish a defamatory matter concerning another in communications preliminary to proposed judicial proceeding, or in the institution of or during the course and as a part of, judicial proceeding in which he participates, if the matter has some relation to the proceeding."  Comment B explains that this rule "applies to communications . . . as well to information given in informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution whether or not the information is followed by a formal complaint or affidavit."

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

It has been well established that statements to a prosecutor or district attorney are absolutely privileged. Abrahams v. Young & Rubicam, Inc., 79 F.3d 234, 240 (2d Cir. 1996). The recognition of the absolute privilege in statements made to a prosecutor has been established by our Supreme Court since 1884. In Vogel v. Gruaz, our Supreme Court recognized that:

> it was the province and the privilege of any person who knew of facts tending to show the commission of a crime to lay those facts before the public officer whose duty it was to commence a prosecution for the crime. Public policy will protect all such communications absolutely, and without reference to the motive or intent of the informer or the question of probable cause; the ground being that greater mischief will probably result from inquiring or permitting them to be disclosed than from wholly rejecting them.

110 U.S. 311, 315-16, 4 S.Ct. 12 (1884). "[T]he filing of an affidavit, information or other statement with a prosecuting attorney may potentially set the process in motion for the investigation of a crime and the possible prosecution of those suspected of criminal activity . . . the absolute privilege or immunity for statements made in judicial proceedings extends to every step in the proceeding, from beginning to end." Dicorpo v. Sweeney, 634 N.E. 2d 203, 209 (Ohio 1994); see also Mershon v. Beasley, 994 F.2d 449, 454 (8th Cir. 1993); Borg v. Boas, 231 F.2d 788, 794 (9th Cir. 1956); Piper v. Scherr, 533 A.2d 974, 977 (N.J. App. 1987); McGranahan v. Dahar, 119 N.H. 758, 408 A.2d 121, 128 (1979).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

There is ample authority outside of Connecticut supporting the argument that absolute privilege extends to statements made to a law enforcement officer.  See e.g. Layne v. Builders Plumbing Supply Co., Inc., 569 N.E. 2d 1104, 1108 (Ill. App. 1991); Correllas v. Viveiros, 410 Mass. 314, 320, 572 N.E. 2d 7, 11 (1991); Fridovich v. Fridovich, 573 So. 2d 65, 71 (Fla. App. 1990); McGranahan, 408 A.2d at 127-128; Tiedemann v. Superior Court, 148 Cal. Rptr. 242, 247-48 (Cal. App. 1978). "[S]tatements by a party, counsel, or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements related to that proceeding."  Collellas, 410 Mass at 11, 572 N.E. 2d at 321, quoting Sriberg v. Raymond, 370 Mass. 105, 108, 345 N.E. 2d 882 (1976).  Here, the statements and identification were made in the institution of or during the course of the investigation of the larceny.  As the Collellas court noted, "[a] conditional or qualified privilege does not adequately protect a witness or party because he or she may still have to go to court to prove the absence of malice or recklessness."  Id.  Therefore, under Massachusetts law, statements made to police and prosecutors in the context of a proposed judicial proceeding are absolutely privileged.  Id.  This principle should be applied to the facts presented here.  Here, a vehicle is stolen right off the lot while two employees witness the perpetrator drive away.  The two employees report the incident to the police and are

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

subsequently asked to view a photo array.  The employees identify the suspect and

provide written statements memorializing their recollection of the incident.  A warrant

application is submitted, and then signed by a judge.  Even if the employees identified

the wrong suspect, a simple misidentification should not constitute a colorable claim of

defamation.

>   4.    The Defendants Are Alternatively Entitled To Qualified Or
>          Conditional Privilege.

Our courts have recognized a conditional privilege where a "statement is

made in good faith, without malice, in an honest belief of the truth of the statement and

the discharge of a public or private duty."  Miles, supra, 11 Conn. at 594 n. 8.  "Privilege

is an affirmative defense in a defamation action and must, therefore, be specifically

pleaded by the defendant."  Id.  To establish a conditional privilege, the defendant must

prove:  (1) an interest to be upheld; (2) a statement limited in its scope to this purpose;

(3) good faith; (4) a proper occasion; and (5) a publication in a proper manner to proper

parties only."  Id. at 595.  Malice, improper motive or lack of good faith in making a

statement will result in the defendant losing the privilege.  Id.  Here, the evidence is

uncontroverted that even those defendants who provided statements to the Danbury

Police did so to advance a public interest in reporting criminal activity.  Identifications

made by the defendants and the statements provided to the Danbury Police were

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

limited in scope to the criminal prosecution, they were made in good faith and on a proper occasion.  Moreover, the statements were provided only to and as a part of the criminal investigation and, therefore, were made in a proper manner to the proper parties only.  Thus, even if the Court were to conclude that there is no absolute privilege, conditional privilege applies to the statements and the defendants are immune from liability on a defamation claim.

IV.    <u>CONCLUSION</u>

     Wherefore, for the foregoing reasons, the undersigned defendants respectfully request that the Court to grant their motion in its entirety and enter judgment in their favor.

                                          DEFENDANTS:
                                          DANBURY PORSCHE;
                                          JOSH WEEKS; AND
                                          PAUL BURKMAN

                                     BY_____
                                          Brian P. Leaming
                                          Fed. Bar No. ct 16075
                                          HALLORAN & SAGE LLP
                                          One Goodwin Square
                                          Hartford, CT  06103
                                          Tele: (860) 522-6103

One Goodwin Square
225 Asylum Street
Hartford, CT  06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

<u>CERTIFICATION</u>

This is to certify that on this 7th day of January, 2004, the foregoing was either mailed, postpaid, or hand-delivered to:

Mr. Shawn Cammorto
Inmate #02A6718
Adirondack Correctional Facility
P.O. Box 110
Ray Brook, New York 12377-0110

_____
Brian P. Leaming

486010.1(HS-FP)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105